## Case No. 3,430.

### CROSS v. DE VALLE.

[1 Cliff. 282.] [1]

Circuit Court, D. Rhode Island. June Term, 1859.[2]

CONSTRUCTION OF WILL—ALIEN DEVISEE—FUTURE RIGHTS.

1. A court of equity will not interfere to declare future rights which may arise under a will.

[See note at end of case.]

2. The rule which prevails at common law, that an alien can take lands by purchase, though not by descent, prevails also in equity.

3. Where an interest in real estate is devised to an alien, he will be entitled to hold the same until the state shall interpose its prerogative claim.

[See note at end of case.]

The complainant in this case [George W. Cross] was the devisee of certain property described in the will of Thomas Lloyd Halsley, of Providence, under certain contingencies specified in the will of the testator. All that portion of the property which was the subject of controversy was devised and directed to be placed in trust, in the hands and possession of John C. Brown and Moses B. Ives of Providence, and the survivor of them, in fee-simple, with directions to pay over the rents, income, and profits to the natural daughter of the testator, one Maria Louisa A. De Valle, who then resided with her husband in Buenos Ayres, for and during the term of her natural life, upon her sole and separate receipt therefor, and for her sole and exclusive use. The testator then directed the trustees to convey to the eldest son of his daughter living at the time of her decease, if he shall have arrived at the age of twenty-one years and have complied with certain conditions as to his change of name and residence, one half of the property included in the devise to his daughter, and the other half to the remaining children. The will also provided for the contingency of the minority of the eldest son at the decease of his mother, as well as for the event of the son's failure to comply with the conditions of the legacy. Further provision was also made in the will for the event of there being no sons of the said Maria Louisa, in which case the testator directed that the property should be conveyed to his granddaughters, to share and share alike. But in case Maria A. De Valle should die without lawful issue living, or male issue only, who should die before arriving at the age of twenty-one years, or should leave issue, all of whom should neglect or refuse to comply with the conditions before expressed, then the property was to be conveyed to the complainant upon similar conditions, should he then be living, and subject to certain special legacies. Maria Louisa

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirmed in Cross v. Del Valle, 1 Wall. (68 U. S.) 1.]

A. De Valle was shown in the record to be a native of Buenos Ayres, and at the death of the testator was domiciliated there, with her husband Raimondo De Valle. When the bill was filed, she was the mother of one son, and two other children were subsequently born in the state of Rhode Island. The surviving trustee, Maria Louisa A. De Valle and her husband and children, and the heirs at law of the testator, were made parties to the suit as respondents. The object of the bill was to obtain from the court a decree to declare the trusts of the will, and that the trusts in favor of Maria Louisa A. De Valle and her children, so far as they related to real estate situate in Rhode Island, might be declared void and of no effect, and incapable of being enforced, on account of the alienage of the said Maria Louisa A. De Valle and her children; also that the trusts in the will, so far as the same related to said real estate, be hastened in enjoyment, by such failure of the trusts made in the will in favor of said Maria Louisa and her children; and that the trustees be decreed to convey the same to the complainant upon his compliance with the conditions of the will. Demurrers to the bill were filed by the trustees, the guardians ad litem of the children of Maria Louisa A. De Valle and her husband. The cause stood for hearing upon the demurrers.

A. Payne and C. Hart, for complainant.

T. A. Jenckes and B. R. Curtis, for De Valle and trustees.

R. Curtis and S. Currey, for heirs at law.

CLIFFORD, Circuit Justice. On this state of the case the first inquiry to be made is, as to the limit to the jurisdiction of this court in declaring the trusts of a will upon the suit of a person interested in the dispositions. This question was so fully considered in the case of Langdale v. Briggs on appeal, and reported in 39 Eng. Law & Eq. 194–214, that it would be merely to repeat what is there said, to enter upon an extended consideration of it at the present time. Several questions were there presented, and among the number the one whether the court, in a case like the present, would declare future rights and give directions accordingly, pursuant to the prayer of the bill of complaint. But the court declined to interfere in that behalf, and Lord Justice Turner held that a court of equity had no power to make such a declaration. His remarks upon the subject are so entirely applicable to the case before the court, that we prefer to give them in his own language. Responding to the counsel who had urged the point, he said: "The argument on the part of the appellant in support of his claim to have his rights declared and directions given with respect to them, even assuming his interest to be reversionary merely, was so strongly pressed at the bar that I think it right in the first place to state my opinion on that point, the more so as it is

certainly a point of much importance with reference to the course and practice of the court, and, I may perhaps add, to the law of the country. As long as I have known this court, now for no inconsiderable period, I have always considered it to be settled that the court does not declare future rights, but leaves them to be determined when they come into possession. In all cases, within my experience where there have been tenancies for life, with the remainder over, the course has been to provide for the interests of the tenants for life, reserving liberty to apply upon their deaths. The practice has been so familiar to me, that I confess myself to have been surprised at the length to which the argument on the part of the appellant was carried on that point." Various considerations were urged in support of the proposition, and in the course of the argument the great convenience and advantage it would be to parties to have their future rights ascertained and declared, were much pressed upon the court by the counsel of the appellant. To that suggestion the learned judge replied in effect, that the question was not one of discretion, but deeply affected the law of the court; that the course and practice in such cases constituted the law of the court; and added: "I cannot agree to break through that law upon any mere ground of convenience. If the law is productive of inconvenience, it is for the legislature to alter it, and I am far from thinking that, to some extent at least, the legislature might not usefully interpose and provide some remedy for the ascertainment of future rights; but I think if this be done at all, it should be done by the legislature, as the legislature alone can fence the measure with the protections which will obviously be required; and such a measure, if adopted, ought not to be confined to mere equitable rights. * * * Generally speaking," he concludes, "I apprehend that it is not according to the course of the court to declare future rights." In the case of Jackson v. Turnley, 21 Eng. Law & Eq. 13, the vice chancellor held that the court will not entertain a suit merely for the purpose of declaring that a person who claims to have a right which may arise hereafter has no such right. Believing these principles to be correct, we shall confine the decision at the present time to the single question whether the equitable interest of Maria Louisa A. De Valle is null and void in consequence of her alienage, so that the persons who have interests in remainder have the right to be hastened in their enjoyment of the estate. Other questions discussed at the bar will not now be considered, for the reason that the opinion on this point will dispose of the case made in the bill of complaint. Had the dispositions of the will in her favor been of a legal estate for her life, it is very clear that it could not have been declared void on account of her alienage. All the authorities agree that at common law an alien can take

lands by purchase, though not by descent, or, in other words, he cannot take by the act of law, but he may by the act of the party. This principle, say the supreme court, has been settled in the year-books, and has been uniformly recognized as sound law from that time. Nor is there any distinction whether the purchase be by grant or by devise; in either case the estate vests in the alien, not for his own benefit, but for the benefit of the state; or, in the language of the ancient law, the alien has the capacity to take, but not to hold lands, and they may be seised into the hands of the sovereign. But until the lands are so seised, the alien has complete dominion over the same. Fairfax v. Hunter's Lessee, 7 Cranch [11 U. S.] 619. Assuming this principle to be correct, of which there can be no doubt, it would seem to follow almost as an inevitable consequence that the same rule must prevail in equity. It is a principle of equity that equitable estates shall be subject to the same modes and conditions as corresponding legal estates, and it could hardly be, in a case like the present, that the consequences of a purchase by an alien of an interest in land would so far differ as to be valid or invalid accordingly as the estate was legal or equitable. Support to the proposition that equity recognizes no such distinction, is to be found in the decision of the courts as well as in the standard works of elementary writers upon the subject. A trust of lands, says Mr. Lewin, may be declared in favor of an alien, but cannot be enforced by him for his own benefit, it being contrary to law that an alien should plead or be impleaded touching lands in any court in the kingdom, and the king, on inquest found, will be entitled to the trust by forfeiture; for the mischief is the same as if the alien had purchased the lands themselves. But the forfeiture vests not in the king the legal estate, but merely transfers to him the right of suing a subpoena against the trustee in equity. A distinction, says the same author, has been taken, that although, when a trust is perfected in favor of an alien, the crown may be entitled, yet when a trust in favor of an alien is not in esse, but only in fieri and executory, the court will do no act to give it to an alien who by law cannot hold. Lewin, Trusts, 43. This subject was discussed with much learning and ability in the case of Hubbard v. Goodwin, 3 Leigh, 492, by the court of appeals of Virginia; and the court sustained the conclusion that a trust estate acquired by an alien is acquired for the state, and that a court of equity will compel the trustee to execute the trust for the benefit of the state. To the same effect also is the case of Barrow v. Wadkin, 24 Beav. 1, which arose on a devise to the widow of the testator for life, and after her decease to the defendant Wadkin in trust for Elizabeth Barrow so long as she should be the wife or widow of John Barrow, for her sole and separate use without power of anticipation, and after her decease or marriage, upon trust for the children of John and Elizabeth Barrow. Elizabeth Barrow and her children were aliens. On this state of facts the question was, whether the trustees, the heir at law, or the crown took the estate. Sir John Romilly, the master of the rolls, gave the opinion, in which he went into a lengthened and careful investigation of the whole subject. Without repeating his remarks, it will be sufficient to say that his conclusions are similar to those of the court of appeals of Virginia to which reference has already been made. He dissents, however, from the distinction alluded to by Lewin, in the closing part of the extract we have made from his work. These authorities, in our opinion, are conclusive to show that, conceding the allegations of the bill, Maria Louisa A. De Valle is an alien, and that the will conveys an interest in real estate which she cannot hold, and that no treaty between the United States and the Argentine Confederation is applicable to the case to corroborate her title, that nevertheless no one or all of these considerations can be productive of any benefit to this complainant. She is entitled to hold the estate until the state of Rhode Island shall interpose her prerogative claim. Under these circumstances, we do not consider it necessary or proper to inquire or decide whether the interests disposed of in favor of the respondents are subject to that claim, either upon the terms of the will or of the treaty. Those questions will necessarily arise in case the state of Rhode Island should deem it suitable to present her claim, and to institute a suit to try the right. Demurrer allowed.

[NOTE. The bill was dismissed, and complainant appealed. Pending the appeal he died, and the appeal was prosecuted by his administrator.

[Certain heirs at law of testator filed a cross bill for the purpose of asserting their rights as against the complainant and the other devisees, and a motion was made to dismiss the same for want of jurisdiction.

[The supreme court affirmed the decree, and held, per Mr. Justice Grier, that the circuit court having rightly decided that Maria Del Valle took an equitable life estate by the will, defeasible only by the action of the state of Rhode Island, the complainant was in no situation to call on the court to declare the fate of the contingent remainders, for the reasons, with others, that if the remainders were void his own fell with them, and, if valid, the children of Mrs. Del Valle, in esse and in posse, would be entitled to come in before him, and that, furthermore, the case presented no necessity which called upon the court to depart from the general rule and decree as to the future rights of parties not before it. The court further held that, the principal bill having been dismissed, the cross-bill fell with it. Cross v. Del Valle, 1 Wall. (68 U. S.) 1.

[For proceedings on a bill filed in the district of Massachusetts, and seeking the same relief, see Case No. 3,431.]